1

2

3                    **UNITED STATES DISTRICT COURT**

4                         **DISTRICT OF NEVADA**

5   RAFAEL REID,                    Case No. 3:17-cv-00532-HDM-CLB

6                      Petitioner,

7        v.                                      **ORDER**

8   WILLIAM GITTERE, et al.,

9                      Respondents.

10       This counseled habeas petition pursuant to 28 U.S.C. § 2254

11  comes before the court on the respondents' motion to dismiss (ECF

12  No. 36). The petitioner, Rafael Reid ("Reid"), has opposed (ECF

13  No. 48), and the respondents have replied (ECF No. 54).

14  **I. Procedural Background**

15       Reid challenges his 2015 Nevada state court conviction,

16  pursuant to a guilty plea, of attempt sexual assault and robbery.

17  (Exs. 30 & 47).[1] After filing, and failing to prevail on, a motion

18  to withdraw his guilty plea in the trial court, Reid filed a direct

19  appeal through counsel Michael Sanft. (Exs. 42-44 & 50). The Nevada

20  Court of Appeals affirmed on May 17, 2016, and the Nevada Supreme

21  Court issued remittitur on June 13, 2016. (Exs. 63 & 64).

22       Reid asserts that he did not learn of the decision on his

23  direct appeal until more than a year later – on July 25, 2017. By

24

25  _____
    [1] The exhibits containing the relevant state court record cited in
26  this order are located at ECF Nos. 17, 19, 37-40 and 49-50. The
    court will cite to the respondents' exhibits (located at ECF Nos.
27  37-40) by exhibit number and to the petitioner's exhibits (located
    at ECF Nos. 17, 19 and 49) by ECF number.

28

                                   1

1    then, the deadline for filing a state court postconviction petition

2    had passed and the deadline for a federal habeas petition was

3    looming.

4         Reid filed the instant federal petition on August 29, 2017.

5    The court appointed counsel, and counsel filed an amended petition

6    on July 24, 2018. (ECF No. 16). Counsel also moved to stay and

7    abey proceedings so that Reid could exhaust his claims through a

8    state court postconviction petition. The court granted Reid's

9    motion, and proceedings were stayed while Reid pursued his state

10   court petition.

11        The state court denied Reid's petition on the grounds it was

12   untimely, and the Nevada Court of Appeals affirmed. (Exs. 71, 79

13   & 94). Reid subsequently returned to this court and moved to reopen

14   proceedings and for leave to file a second amended petition. The

15   court granted both motions. Reid filed his second amended petition

16   on April 23, 2020. (ECF No. 32). The instant motion to dismiss

17   followed.

18   **II. Timeliness**

19        The respondents argue this action should be dismissed because

20   not one of Reid's three petitions was filed before the federal

21   statute of limitations expired. Reid does not deny that his

22   original and subsequent petitions were filed after the expiration

23   of the statutory limitations period, but he asserts that he should

24   be granted equitable tolling and that his claims otherwise then

25   relate back to a timely filed petition.

26        The Antiterrorism and Effective Death Penalty Act ("AEDPA")

27   amended the statutes controlling federal habeas corpus practice to

28

1   include a one-year statute of limitations on the filing of federal

2   habeas corpus petitions. With respect to the statute of

3   limitations, the habeas corpus statute provides in relevant part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . .

8   28 U.S.C. § 2244(d)(1)(A).[2]

9       A claim in an amended petition that is filed after the

10   expiration of the one-year limitation period will be timely only

11   if the claim relates back to a timely filed claim pursuant to Rule

12   15(c) of the Federal Rules of Civil Procedure, on the basis that

13   the claim arises out of "the same conduct, transaction or

14   occurrence" as the timely claim. *Mayle v. Felix*, 545 U.S. 644

15   (2005). In *Mayle*, the Supreme Court held that habeas claims in an

16   amended petition do not arise out of "the same conduct, transaction

17   or occurrence" as prior timely claims merely because the claims

18   all challenge the same trial, conviction, or sentence. 545 U.S. at

19   655-64. Rather, under the construction of the rule approved in

20   *Mayle*, Rule 15(c) permits relation back of habeas claims asserted

21   in an amended petition "only when the claims added by amendment

22   arise from the same core facts as the timely filed claims, and not

23   when the new claims depend upon events separate in 'both time and

24   type' from the originally raised episodes." 545 U.S. at 657. In

25   this regard, the reviewing court looks to "the existence of a

26

27   [2] Reid does not argue that any other subsection of § 2244(d)(1) applies in this case.

28

1   common 'core of operative facts' uniting the original and newly

2   asserted claims." A claim that merely adds "a new legal theory

3   tied to the same operative facts as those initially alleged" will

4   relate back and be timely. 545 U.S. at 659 & n.5.

5        The Ninth Circuit has set forth a two-step analysis to

6   determine whether a claim relates: (1) "determine what claims the

7   amended petition alleges and what core facts underlie those

8   claims"; and (2) "for each claim in the amended petition, ... look

9   to the body of the original petition and its exhibits to see

10  whether the original petition 'set out' or 'attempted to ... set

11  out' a corresponding factual episode, *see* Fed. R. Civ. P.

12  15(c)(1)(B)—or whether the claim is instead 'supported by facts

13  that differ in both time and type from those the original pleading

14  set forth,' *Mayle*, 545 U.S. at 650, 664, 125 S. Ct. 2562." *Ross v.*

15  *Williams*, 950 F.3d 1160, 1167-68 (9th Cir. 2020). It is not

16  required that the "facts in the original and amended petitions be

17  stated in the same level of detail." *Id.*

18       The parties agree that Reid's federal petition was filed

19  almost two weeks after the federal statute of limitations expired.

20  However, Reid asserts that he was abandoned by counsel, who never

21  advised him of the conclusion of his direct appeal. He argues he

22  therefore be allowed equitable tolling through the filing of both

23  the original *and* first amended petitions.

24       Equitable tolling is appropriate only if the petitioner can

25  show that: (1) he has been pursuing his rights diligently, and (2)

26  some extraordinary circumstance stood in his way and prevented

27  timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). "[F]or

28

a litigant to demonstrate 'he has been pursuing his rights diligently,' . . . he must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc).

"The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653.

> In determining whether reasonable diligence was exercised courts shall consider the petitioner's overall level of care and caution in light of his or her particular circumstances and be guided by decisions made in other similar cases with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.

*Smith*, 953 F.3d at 599 (internal punctuation and citations omitted).

Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." *Id.* at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g.*, *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant*

1    *v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

2    "[I]t is only when an extraordinary circumstance prevented a

3    petitioner acting with reasonable diligence from making a timely

4    filing that equitable tolling may be the proper remedy.'" *Smith*,

5    953 F.3d at 600.

6       Reid was sentenced on December 1, 2015. (ECF No. 45). Judgment

7    of conviction was entered on December 7, 2015, and counsel filed

8    a notice of appeal that same date. (ECF Nos. 47 & 48).

9       On January 12, 2016, Reid sent his attorney, Michael Sanft,

10   a letter that asked for confirmation that his appeal had been filed

11   and for a copy of his appeal and of the sexual assault examination

12   report.[3] (ECF No. 17-2). In the letter, Reid noted that it was his

13   second letter to Sanft, that Sanft had not responded to his first

14   letter and that no one ever answered the phones at Sanft's office.

15   (*Id.*) Two weeks later, Reid sent a letter to the state court that

16   explained he had been trying to reach his attorney with no success

17   and requested any help the court might be able to offer in that

18   regard. (ECF No. 17-3).

19      Five months later, on July 2, 2016, Reid sent a letter to an

20   investigator.[4] (ECF No. 17-4). In the letter, Reid explained that

21   he had been trying without success to reach Sanft and asked the

22   investigator if he could send him a copy of the sexual assault

23

24   [3] The respondents have not contested the authenticity of this or
     any other item of evidence submitted by the petitioner.

25   [4] Although neither party explains whether the investigator had
     worked on Reid's case or in Sanft's employ, the contents of the
26   letter suggest that Reid at least believed the investigator was
     either familiar with Reid's case or familiar enough with Sanft to
27   be able to contact him.

28

1   exam and advise whether his appeal had been filed. Three weeks

2   later, on July 23, 2016, Reid sent a second letter to the trial

3   court. (ECF No. 17-5). In his letter, Reid again complained of an

4   inability to contact Sanft and asked the trial court for help.

5   (*Id.*) In each letter, Reid appears unaware his appeal had been

6   decided just a few months before.

7      There is no evidence that anyone – the investigator, Sanft or

8   the state court – responded in any fashion to Reid's requests for

9   information. In addition, that Reid was unable to contact or obtain

10   any response from Sanft is corroborated by accounts from several

11   of his family members, including two who were also unable to reach

12   Sanft on Reid's behalf during this time period. (ECF Nos. 49-1,

13   49-2, 49-4, 49-5 & 49-6).

14      Nearly a year after sending his last letter to the state

15   court, Reid moved to withdraw Sanft as counsel on July 17, 2017.

16   (Ex. 65). In his motion, Reid also asked the court to order Sanft

17   to turn over his case file. (*Id.*) On July 25, 2017, on the advice

18   of another inmate, Reid pulled a copy of his state court docket.

19   It was then, he claims, he finally learned that his appeal had

20   been decided.

21      "[I]f a petitioner's attorney 'fail[s] to satisfy

22   professional standards of care,' and if the failure contributes to

23   the untimely filing of a federal petition, the petitioner may be

24   entitled to equitable tolling." *Holland*, 560 U.S. at 649. An

25   attorney's "[f]ailure to inform a client that his case has been

26   decided, particularly where that decision implicates the client's

27   ability to bring further proceedings and the attorney has committed

28

1   himself to informing his client of such a development, constitutes

2   attorney abandonment" justifying equitable tolling. *Gibbs v.*

3   *Legrand*, 767 F.3d 879, 886 (9th Cir. 2014).

4        The uncontested evidence before the court is that Sanft, who

5   was acting as Reid's attorney and was thus receiving notice of

6   court filings on Reid's behalf, never advised Reid that his appeal

7   had concluded. Reid tried repeatedly to obtain initiate contact

8   with his counsel regarding his appeal with letters to counsel, an

9   investigator, and the trial court -- to no avail. The court

10  therefore concludes Sanft abandoned Reid. That, coupled with the

11  failure of any other person or entity to respond to Reid's multiple

12  requests for information, was an extraordinary circumstance that

13  prevented the timely filing of Reid's federal petition.

14       The court further concludes that Reid exercised reasonable

15  diligence before, during and after the extraordinary circumstance

16  prevented timely filing. Reid made several attempts to contact his

17  attorney through multiple avenues – phone calls, letters to

18  counsel, a letter to an investigator, and letters to the court. He

19  did not send just one letter, as respondents argue. After receiving

20  no responses during the seven-month period, Reid paused his efforts

21  to obtain information. However, after a year of silence, Reid moved

22  to have counsel withdrawn and his case file turned over and, on

23  advice of another inmate, ran his docket to discover his appeal

24  had been decided. Under the circumstances of this case, and similar

25  to other cases, it was not unreasonable for Reid to wait a year

26  before taking further actions to ascertain the status of his

27  appeal. *See, e.g.*, *Fue v. Biter*, 842 F.3d 650, 654-55 (9th Cir.

28

1  2016).

2      Respondents argue that Sanft was not appointed to file a

3  postconviction petition for Reid, but that is beside the point.

4  Saft was responsible for alerting Reid that his appeal had been

5  decided and it was reasonable for Reid to wait for his direct

6  appeal to be decided before filing his state postconviction

7  petition, *Loveland v. Hatcher*, 231 F.3d 640, 644 (9th Cir. 2000)

8  ("If a defendant reasonably believes that his counsel is pursuing

9  his direct appeal he most naturally will not file his own post-

10 conviction relief petition. Indeed, a defendant could seriously

11 prejudice his case if he were to prepare and file a habeas petition

12 while his counsel was pursuing his direct appeal."), and to wait

13 for his state petition to be filed before filing his federal

14 petition. Thus, it was Sanft's failure to advise Reid of the status

15 of his appeal that precluded Reid from timely filing his federal

16 habeas petition.

17     Respondents also assert that the state courts' factual

18 findings, made in connection with Reid's untimely state petition,

19 are entitled to deference.[5] In affirming the dismissal of Reid's

20 state court postconviction petition, the Nevada Court of Appeals

21 made the following factual findings:

22      Reid did not allege that counsel affirmatively
        misrepresented the status of his appeal. Further, the
23      record before this court demonstrates Reid knew how to

24 _____

25 [5] The state courts' legal findings are not entitled to deference
   in this context. *See Holland v. Florida*, 560 U.S. 631, 650 (2010)
26 ("Equitable tolling . . . asks whether federal courts may excuse
   a petitioner's failure to comply with federal timing rules, an
27 inquiry that does not implicate a state court's interpretation of
   state law.").

28

1
2

> request information directly from both the district
> court and the appellate court. Reid did not explain his
> delay in requesting that information. Based on these
> facts, Reid failed to demonstrate cause for the delay.

3   (Ex. 94 at 2). First, the Court of Appeals made no finding that

4   Sanft did not abandon Reid. Second, unaddressed by the Court of

5   Appeals is the significance of the two letters Reid sent directly

6   to the trial court in which he sought assistance contacting his

7   attorney -- letters that also indicated that Reid was completely

8   unaware of, and concerned about, the status of his appeal. Nor did

9   the Court of Appeals address the absence of any evidence that the

10  trial court responded to these letters, either by sending Reid a

11  copy of the order denying his appeal or forwarding his letter to

12  his court-appointed attorney with a directive that he contact his

13  client. This is, in the court's opinion, the most critical evidence

14  showing Reid exercised reasonable diligence. In sum, as this

15  court's findings are not at odds with those made by the state

16  courts, the deference due their factual findings does not preclude

17  application of equitable tolling in this case.

18      Accordingly, as Reid has met both requirements for equitable

19  tolling, the original petition -- filed two weeks after the

20  expiration of the federal statute of limitations -- is deemed

21  timely filed. Having so decided, the next question is whether the

22  claims in the first amended petition may be considered timely

23  filed.[6]

24

25  [6] The second amended petition presents the same claims as those in
    the first amended petition. Accordingly, if the first amended
26  petition is timely, the second amended petition – the operative
    petition in this case – is also timely.
27

28

1    Reid argues first that his first amended petition should be

2  subject to equitable tolling on the basis that counsel relied on

3  Ninth Circuit cases endorsing a stop-clock approach to equitable

4  tolling when deciding when to file the amended petition. Although

5  there is Ninth Circuit case law holding that equitable tolling may

6  be granted when a petitioner's attorney reasonably relies on the

7  unsettled law in deciding when to file his petition, *Williams v.*

8  *Filson*, 908 F.3d 546, 559 (9th Cir. 2018), the court need not

9  decide whether this law applies in the context of this case. The

10 claims in the first amended petition may be deemed timely through

11 application   of   relation-back   and   other   equitable   tolling

12 principles.

13    The first amended petition asserts the following claims: (1)

14 Reid's plea was not knowing and voluntary because (a) he made it

15 without first having seen the victim's sexual assault examination

16 report   and   (b)   his   attorney   grossly   mischaracterized   the

17 likelihood that he would receive probation if he pled; (2) trial

18 counsel was ineffective on the same facts alleged in Ground One;

19 and (3) appellate counsel was ineffective on the same facts as

20 Ground One.

21    In his original petition, in relevant part, Reid asserts that

22 trial counsel was ineffective because the sexual assault exam

23 report had been withheld but counsel nevertheless failed to request

24 a continuance of trial, which forced Reid into an unfavorable plea.

25 (ECF No. 6 at 5). The core of operative facts supporting this

26 ineffective assistance of counsel claim is that Reid entered his

27 plea without the benefit of the sexual assault examination report,

28

1    which are the same operative facts underlying his claims that his

2    plea was involuntary because it was made without the report, and

3    that trial and appellate counsel were ineffective for the same

4    reason. *See Nguyen v. Curry*, 736 F.3d 1287, 1296-97 (9th Cir. 2013)

5    (holding that a claim that appellate counsel was ineffective for

6    failing to raise double jeopardy related back to a timely raised

7    substantive double jeopardy claim), *abrogated on other grounds by*

8    *Davila v. Davis*, – U.S. –, 137 S. Ct. 2058 (2017). Accordingly,

9    those parts of Grounds One, Two and Three based on the sexual

10   assault examination report relate back to the original petition

11   and are timely.

12        The operative facts underlying Reid's claims that counsel

13   ineffectively predicted that Reid would get probation, however,

14   are not to be found in the original petition. While Reid references

15   his motion to withdraw guilty plea, which in turn references (but

16   is not based on) counsel's estimate that Reid would get probation,

17   this is insufficient for relation back purposes. First, the motion

18   to withdraw is not attached to the petition and is not therefore

19   considered part of the petition. Second, there is no attempt by

20   Reid to incorporate the contents of the motion to withdraw as part

21   of his petition.  Accordingly, those parts of Grounds One, Two and

22   Three that rely on counsel's estimation of the likelihood of

23   probation do not relate back to the original petition.

24        However, the court is persuaded by Reid's alternative

25   argument that equitable tolling should apply through the filing of

26   his first amended petition for at least this claim on the grounds

27   of attorney abandonment and lack of a case file. Under some

28

1  circumstances, the lack of a case file might justify equitable

2  tolling, *see Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013 (9th

3  Cir. 2009); *Lott v. Mueller*, 304 F.3d 918, 924-25 (9th Cir. 2002),

4  if "the hardship caused by lack of access to [the] materials was

5  an extraordinary circumstance that caused" the untimely filing of

6  the federal petition. *See Waldron-Ramsey*, 556 F.3d at 1013. Counsel

7  argues, and the respondents do not dispute, that the transcripts

8  for Reid's change of plea and sentencing were not available until

9  May 2018. The court is further persuaded that the probation claim

10  could not have been ascertained without first reviewing those

11  transcripts. As such, the court concludes that Reid's claims based

12  on counsel's advice about probation were not available until May

13  2018 and that counsel acted diligently in preparing and filing the

14  first amended petition asserting that claim less than three months

15  later.

16     In sum, the court concludes that, through application of

17  equitable tolling and relation back, the claims in the first

18  amended petition, and by extension the second amended petition,

19  are timely.

20  **III. Procedural Default**

21     The respondents argue that even if the petition is deemed

22  timely, all of Reid's claims are procedurally defaulted.

23     A federal court cannot review a claim "if the Nevada Supreme

24  Court denied relief on the basis of 'independent and adequate state

25  procedural grounds.'" *Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th

26  Cir. 2003). In *Coleman v. Thompson*, the Supreme Court held that a

27  state prisoner who fails to comply with the state's procedural

28

1  requirements in presenting his claims is barred from obtaining a

2  writ of habeas corpus in federal court by the adequate and

3  independent state ground doctrine. *Coleman v. Thompson*, 501 U.S.

4  722, 731-32 (1991). A state procedural bar is "adequate" if it is

5  "clear, consistently applied, and well-established at the time of

6  the petitioner's purported default." *Calderon v. United States*

7  *District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996).  A state

8  procedural bar is "independent" if the state court "explicitly

9  invokes the procedural rule as a separate basis for its decision."

10  *Yang v. Nevada*, 329 F.3d 1069, 1074 (9th Cir. 2003). A state

11  court's decision is not "independent" if the application of the

12  state's default rule depends on the consideration of federal law.

13  *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000).

14      The Nevada Court of Appeals affirmed dismissal of Reid's state

15  postconviction petition on the grounds that it was untimely. The

16  Ninth Circuit has held that the Nevada Supreme Court's application

17  of the timeliness rule in § 34.726(1) is an independent and

18  adequate state law ground for procedural default. *Moran v.*

19  *McDaniel*, 80 F.3d 1261, 1268-70 (9th Cir. 1996); *see also Valerio*

20  *v. Crawford*, 306 F.3d 742, 778 (9th Cir. 2002). Accordingly, Reid's

21  claims are procedurally defaulted.

22      A procedural default may be excused only if "a constitutional

23  violation has probably resulted in the conviction of one who is

24  actually innocent," or if the prisoner demonstrates cause for the

25  default and prejudice resulting from it.  *Murray v. Carrier*, 477

26  U.S. 478, 496 (1986).

27

28

1        To demonstrate cause for a procedural default, the petitioner

2   must "show that some objective factor external to the defense

3   impeded" his efforts to comply with the state procedural rule.

4   *Murray*, 477 U.S. at 488. For cause to exist, the external

5   impediment must have prevented the petitioner from raising the

6   claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991).

7        With respect to the prejudice prong, the petitioner bears

8   "the burden of showing not merely that the errors [complained of]

9   constituted a possibility of prejudice, but that they worked to

10  his actual and substantial disadvantage, infecting his entire

11  [proceeding] with errors of constitutional dimension." *White v.*

12  *Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United States v.*

13  *Frady*, 456 U.S. 152, 170 (1982)).

14       Reid asserts that the abandonment of counsel discussed above

15  constitutes cause for the default of his claims. In *Maples v.*

16  *Thomas*, 565 U.S. 266, 271, 289 (2012), the Supreme Court held that

17  abandonment by counsel at a critical time for the petitioner's

18  state postconviction petition can constitute cause to excuse a

19  procedural default. As the court has already found, the evidence

20  before the court supports the conclusion that Reid was abandoned

21  by Sanft at a time critical to his state postconviction petition,

22  *i.e.*, during the time period in which he could have filed a timely

23  state postconviction petition in order to properly exhaust his

24  federal claims. Sanft not only failed to advise Reid that his

25  appeal had been decided, he utterly failed to respond to multiple

26  attempts by Reid to contact him about the status of his case. This

27  amounted to abandonment in the circumstances of this case and

28

1   therefore constitutes cause for the procedural default of Reid's

2   claims.[7]

3        Whether Reid has suffered prejudice as a result, however, is

4   a question that is inextricably intertwined with the merits of

5   Reid's claims. The court will therefore defer a determination of

6   whether Reid has suffered prejudice until the time of merits

7   consideration.

8   **IV. Conclusion**

9        In accordance with the foregoing, IT IS THEREFORE ORDERED

10  that the respondents' motion to dismiss (ECF No. 36) is DENIED.

11       IT IS FURTHER ORDERED that respondents shall file an answer

12  to the second amended petition within sixty days of the date of

13  this order. In filing the answer, respondents must comply with the

14  requirements of Rule 5 of the Rules Governing Section 2254 Cases

15  in the United States District Courts and shall specifically cite

16  to and address the applicable state court written decision and

17  state court record materials, if any, regarding each claim within

18  the response as to that claim.

19  /

20  /

21  /

22  /

23

24  [7] The respondents' argument that the court must defer to the state
    courts' finding that no cause existed for the untimely filing of
25  the state petition is without merit. "[T]he question whether a
    petitioner's procedural default is excused by cause and prejudice
26  for purposes of federal habeas review is a federal, not state,
    question." *Visciotti v. Martel*, 862 F.3d 749, 768 n.10 (9th Cir.
27  2016).

28

1    IT IS FURTHER ORDERED that Reid will have sixty days from

2 service of the answer within which to file a reply.

3    IT IS SO ORDERED.

4    DATED this 22nd day of March, 2021.

5

6                                    _Howard D McKibben_

7                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17