**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RAFAEL REID,<br>Petitioner<br>v.<br>WILLIAM GITTERE, et al.,<br>Respondents | Case No. 3:17-cv-00532-HDM-CLB<br>**ORDER** |

Petitioner, Rafael Reid ("petitioner" or "Reid"), challenges his 2015 Nevada state convictions, pursuant to guilty pleas, for attempted sexual assault and robbery. The second amended petition under 28 U.S.C. § 2254 ("petition") is before the Court for adjudication on the merits.[1] (ECF No. 32).

In his petition, Reid claims his guilty pleas were not knowing and voluntary because, prior to entering them, trial counsel (1) failed to show him the victim's sexual assault nurse examination (SANE) report, and (2) grossly mischaracterized Reid's chances for probation. The Court previously ruled all of Reid's claims are procedurally defaulted, but the abandonment of Reid by his appellate counsel constitutes cause to overcome the procedural default. (ECF No. 55 at 14–15.) The Court deferred ruling whether Reid has shown prejudice to overcome the procedural default. (*Id.* at 16.) For the reasons discussed below, the Court denies an evidentiary hearing, dismisses the claims in the petition with prejudice, and denies a certificate of appealability.

///

## *Background*

### A. Offenses

According to Karla Harris's voluntary statement to police on April 16, 2015, she arrived at a vacant house in Las Vegas, Nevada that night in response to a call, based on her advertisement in backpage.com, to perform a private dance. (ECF No. 19–1 at 3.) Harris went inside the house, and when she asked for payment up-front, Reid pulled out a black and pink firearm and ordered Harris to remove her clothes and get on her hands and knees. (*Id.* at 3–4.) Harris heard a condom open and then Reid held the firearm to her head while he performed sexual intercourse on her from behind. (*Id.* at 3–4, 19.) According to Harris, Reid ejaculated, went to the bathroom, flushed the toilet, and ordered Harris at gunpoint into the bathroom. (*Id.* at 3-4, 20) Reid left the premises and Harris discovered Reid took her phone and underwear. (*Id.* at 5.)

According to the SANE report,[1] a nurse found no blunt force trauma to Harris's knees or palms but noted an abrasion at the 6 o'clock position of her posterior fourchette. (ECF No. 19-2 at 5.) According to the report, Harris told the nurse she "slipped on her buttocks Saturday," and last had consensual intercourse on January 1, 2013. (*Id.* at 4.)

Police traced calls to Harris from Reid's telephone. (ECF No. 70-3 at 3.) DNA tests confirmed Reid's sperm was inside the bathroom of the vacant house and police found a black and pink firearm at Reid's home. (*Id.*)

---

[1] Reid presented the SANE report to the state courts under seal as an exhibit in support of his untimely postconviction review petition. (ECF Nos. 39-8 at 8, 82; *see also* ECF No. 19-2.)

**B. Proceedings Before Entry of Guilty Pleas**

Reid was charged by complaint with (1) burglary while in possession of a firearm; (2) first-degree kidnapping with use of a deadly weapon; (3) sexual assault with use of a deadly weapon; and (4) robbery with use of a deadly weapon. (ECF No. 39-9 at 12–13.) He waived preliminary hearing and was held to answer for the charges by information. (*Id.* at 29–32, 37.)

The SANE nurse was disclosed as an expert witness and on December 3, 2013, trial counsel acknowledged receipt of discovery. (ECF No. 37-10 at 5.) The State provided trial counsel with six notices between February 13, 2014, and August 7, 2014, in which it disclosed the SANE nurse as a witness and stated, "[t]he substance of each expert witness testimony and copy of all reports made by or at the direction of the expert witness has been provided in discovery." (ECF Nos. 37-17 at 2–3; 37-19 at 2–3; 37-20 at 3, 5; 37-21 at 3, 5; 37-23 at 3, 5; 37-27 at 3, 5.)

**C. Guilty Pleas**

On August 22, 2014, Reid pleaded guilty to attempted sexual assault and robbery in exchange for the State's agreement not to oppose a concurrent sentence, dismissal of all charges in the information, and dismissal of a separate pending case. (ECF Nos. 37-31 at 3-4; 38-18 at 7–16.)

Reid signed a guilty plea agreement confirming he understood the state district court "must" sentence him to imprisonment in the Nevada Department of Corrections. (ECF No. 38-18 at 8.) He confirmed he was not "promised or guaranteed any particular sentence by anyone" and understood his "sentence is to be determined by the Court within the limits prescribed by statute."

(*Id.* at 10.) He verified he understands "except as otherwise provided by statute, the question of whether [he] receive[d] probation is in the discretion of the sentencing judge." (*Id.* at 9.) He confirmed he signed the agreement "voluntarily, after consultation with [his] attorney," and did not do so "under duress or coercion or by virtue of any promises of leniency, except for those set forth" in the agreement. (*Id.* at 12.)

In the guilty plea agreement, Reid also confirmed he understood that he was not eligible for probation unless he submitted to a psychosexual evaluation and the evaluator certified he did not present a high risk to reoffend "based upon a currently acceptable standard of assessment." (*Id.* at 9.) The agreement set forth the applicable statutes, NRS §§ 176A.110 and 176.139, concerning eligibility for probation, which listed criteria used for determining whether he presented a high risk. (*Id.*)

By his agreement, Reid confirmed he discussed with trial counsel "any possible defenses, defense strategies and circumstances which might be in [his] favor" and "[a]ll of the foregoing elements, consequences, rights, and waivers of rights" were "thoroughly explained" to him by counsel. (*Id.* at 12.) The agreement further confirmed counsel "answered all of [his] questions regarding [the] guilty plea agreement and its consequences to [his] satisfaction" and he was "satisfied with the services provided" by trial counsel. (*Id.* at 13.) Counsel signed a certification confirming the allegations contained in the charges to which Reid pleaded guilty were "fully explained," counsel advised Reid "of the penalties for each charge," and Reid "understands the charges and the consequences of pleading guilty

as provided in this agreement." (*Id.* at 14.)

At the change of plea hearing, Reid confirmed he could read, write, and understand English; that he read, understood, and signed the guilty plea agreement; and that he entered guilty pleas pursuant to the guilty plea agreement. (ECF No. 37-31 at 3–5.) He confirmed he understood the charges, pleaded guilty "freely and voluntarily," and [o]ther than what is contained in the agreement, no one made him any promises that induced him to enter into the agreement. (*Id.*) Reid confirmed trial counsel discussed with him the requirements for proving the charges and defenses to those charges. (*Id.* at 7.) He agreed all of his questions were answered to his satisfaction and he had no questions for the sentencing court. (*Id.* at 5, 7–8.)

Regarding his sentence, Reid confirmed he understood he was facing 2 to 20, and 2 to 15, years in the Nevada Department of Corrections for the offenses and the State would not oppose concurrent sentences. (*Id.*) Trial counsel confirmed the offenses to which Reid pleaded guilty "are probationable" offenses and Reid confirmed he understood the state district court required certification that Reid did not "represent a high risk to reoffend" before the court could consider probation. (*Id.* at 5–6.)

Reid stated he was guilty of the sexual assault because he lured "someone into an abandoned house and attempted to have sexual relationship with [her]" against her will and confirmed he committed the robbery by stealing the phone in Harris's presence, by means of force or violence, or fear of injury to, and without her consent and against her will. (*Id.* at 8.)

After the state district court accepted Reid's guilty pleas,

trial counsel requested a bail reduction. (*Id.* at 9–10.) Reid stated he pleaded guilty because he wished to go home to his family, but also confirmed he pleaded guilty because he was guilty. (*Id.* at 10.) The State told the court that trial counsel had informed Reid the State would ask for "a substantial amount of time" at sentencing. (*Id.* at 9.) Trial counsel explained Reid desired a bail reduction because it was his intention "to get his family set up" "in the event he does end up spending significant time away." (*Id.* at 9–10.) The motion was denied. (*Id.* at 11.)

**D. Motion to Strike Psychosexual Evaluation**

On October 20, 2014, a psychosexual evaluation was conducted. (ECF No. 19-3 at 2-3.) According to the evaluation, Reid denied having sex with Harris or taking her phone or underwear. (*Id.* at 9-10.) When asked why he pleaded guilty to the charges if he did not commit the offenses, Reid told the evaluator that his mother-in-law died and his wife "just want [sic] me home." (*Id.*) Reid was certified a high risk for re-offense. (*Id.* at 11-13.)

On December 8, 2014, Reid underwent a mental health evaluation during which he admitted to the evaluator that most of what Harris said in her voluntary statement to police was accurate. (ECF No. 19-4 at 3, 5–6.) Reid explained he was dishonest with the psychosexual evaluator because she used profanity, he did not trust her, and she said he could only obtain a low-risk evaluation if he admitted he committed the crimes. (*Id.*) The mental health evaluator opined Reid's criminal history and the offense dynamics put the psychosexual evaluator on notice that Reid would not score a low risk for reoffending even if he admitted the offenses. (*Id.*)

On January 21, 2015, trial counsel filed a motion to strike

the psychosexual evaluation and requested a new one. (ECF Nos. 37-10 at 15; 37-18 at 3–4; 37-35 at 4–5.) Counsel alleged, *inter alia*, that the evaluator berated Reid for "taking this deal," and recommended restrictions if Reid was granted probation. (ECF Nos. 37-35 at 5; 37-38 at 3.) The State opposed the motion by attaching a letter from the psychosexual evaluator explaining, *inter alia*, she questioned Reid's decision about the plea because Reid claimed he was not guilty of the crimes. (ECF No. 37-36 at 9.) On February 26, 2015, the state district court denied the motion to strike the evaluation. (ECF No. 37-38 at 7.)

On March 2, 2015, the state district court received a letter from Reid dated February 23, 2015, in which he claims he received the SANE report after his guilty plea and would not have pleaded guilty had he known the report contained information that Harris, *inter alia*, (1) could have obtained the abrasion from her slip and fall on her buttocks; (2) had no blunt force trauma to her knees or palms; and (3) attempted to get pregnant. (ECF No. 39-8 at 32–42.) The letter contains no allegation that trial counsel assured him a probationary sentence. (*Id.*)

**E. Motion to Withdraw the Guilty Pleas**

On March 12, 2015, trial counsel informed the state district court that Reid wished to withdraw his guilty plea, and the state district permitted trial counsel to withdraw and appointed new counsel for the motion to withdraw the guilty pleas. (ECF Nos. 37-10 at 17; 37-40 at 4.)

On September 14, 2015, Reid's new counsel filed a motion to withdraw the guilty plea. (ECF No. 38-2.) The motion asserted Reid was aware of the SANE report because the State suggested in prior

proceedings that it contained inculpatory evidence. (*Id.* at 4.) Reid claimed he requested a copy of the SANE report from trial counsel, but it was not provided until after he enter the guilty pleas, and he never would have pleaded guilty had he known the contents of that report because it differed from the State's representations in court. (*Id.* at 5.) The motion also claimed Reid wished to withdraw his guilty plea because trial counsel induced him to accept the plea agreement by assuring him a probationary sentence. (*Id.*) The attorney who prepared the motion for Reid did not verify those allegations, made no representations as to their truth or falsity, and did not attach a copy of the SANE report or other exhibits to support the motion. (*Id.* at 5, n.1.) The parties submitted the motion on the pleadings, and the state district court denied the motion. (ECF Nos. 38-3; 38-4 at 3.)

**F. Sentencing**

Reid was sentenced on December 1, 2015. (ECF No. 38-5.) The State asked the state district court to impose concurrent sentences of 8 to 20 years imprisonment arguing Reid was "very much somebody who's looking at a habitual" with, *inter alia*, 3 prior felonies, 3 prior gross misdemeanors, and 11 misdemeanors, had a rare high-risk psychosexual evaluation, and received "the benefit of the bargain" as he did not face "decades in prison." (*Id.* at 5-7.)

Reid reiterated his desire to withdraw his guilty plea because he did not see the SANE report prior to entering his guilty pleas. (*Id.* at 7–9.) The state district court acknowledged Reid's letter about the SANE report but noted the report does not state Reid did not sexually assault Harris and the court believed Reid overstated the SANE report's support for his case. (*Id.*) Reid acknowledged

the SANE report did not say "it didn't happen" but claimed the report failed to prove he did anything to Harris and contradicted the details of Harris's account of their activities. (*Id.* at 8–9.) Reid also complained that trial counsel told him he had "no fighting chance" at trial because the case would boil down to his word against Harris's and failed to show him any evidence in his favor. (*Id.*) Reid said he pleaded guilty to sexual assault, not because his is guilty, but because trial counsel told him he was "going to get probation" even though his "extensive criminal history shows" he would evaluate as high risk for re-offense. (*Id.* at 9–11.) The court concluded Reid wished only to withdraw his guilty plea because "he knows he's not eligible for probation" and sentenced Reid to imprisonment for an aggregate term of 8 to 20 years. (ECF Nos. 38-5 at 14; 38-7 at 3.)

### ***Standards of Review***

Where a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule," federal habeas review "is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). To demonstrate cause, the petitioner must establish that some external and objective factor impeded efforts to comply with the state's procedural rule. *E.g., Maples v. Thomas*, 565 U.S. 266, 280, 289 (2012) (finding cause to excuse procedural default due to attorney abandonment but remanding for a determination of prejudice); *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (holding

that for cause to exist, the external impediment must have prevented the petitioner from raising the claim). "[T]o establish prejudice, [a petitioner] must show not merely a substantial federal claim, such that 'the errors . . . at trial created a possibility of prejudice,' but rather that the constitutional violation 'worked to his *actual* and substantial disadvantage.'" *Shinn v. Ramirez ;*, No. 20-1009, 2022 WL 1611786, at *7 (U.S. May 23, 2022) (citing *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original).

***Discussion***

**A. Ground One—Voluntariness of Guilty Plea**[2]

In ground 1, Reid claims his guilty plea is not knowing and voluntary in violation of the Fifth, Sixth, and Fourteenth Amendments because (a) he pleaded guilty without having first seen the SANE report and (b) trial counsel grossly mischaracterized the likelihood of a probationary sentence. (ECF No. 32 at 10–13.)

**1. Standards for Evaluating the Voluntariness of a Guilty Plea**

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citations omitted). "The voluntariness of [a guilty plea] can be determined only by considering all of the relevant circumstances

[2] The Court subdivides the grounds 1 and 2. Grounds 1(a) and 2(a) concern Reid's allegations related to the SANE report and grounds 1(b) and 2(b) concern his allegations related to a probationary sentence.

surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (1970). In addressing the standard applicable to the voluntariness of guilty pleas, the Supreme Court endorsed the following definition:

> (A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats . . . misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Id.* at 755 (citation and footnote omitted).

"[T]he Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances"; rather, it "permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630–31 (2002) (noting it is "particularly difficult to characterize impeachment information [not disclosed in discovery] as critical information of which the defendant must always be aware prior to pleading guilty given the random way in which such information may, or may not, help a particular defendant.").

"[T]he representations of the defendant, his lawyer, and the prosecutor [at a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Substantial weight is accorded to the defendant's contemporaneous on-the-record statements in assessing the voluntariness of a guilty plea.

*United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991). A habeas petitioner bears the burden of establishing his guilty plea was not voluntary and knowing. *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006).

**2. SANE Report**

In ground 1(a), Reid claims his guilty plea is not knowing and voluntary because he pleaded guilty without having first seen certain information in the SANE report. (ECF No. 32 at 10-11.)[3]

Reid admitted he was aware of the existence of the SANE report based on the State's representations about it during court hearings prior to entry of the guilty plea and the record demonstrates the SANE report was produced to trial counsel in discovery at the very latest several months prior to Reid's guilty plea in August of 2014. Reid confirmed in his plea agreement and at the change of plea hearing that he spoke with counsel about "any possible defenses, defense strategies, and circumstances which might be in [his] favor." Reid also stated counsel informed him he "had no fighting chance" at trial as the result depended on a credibility contest between Reid and Harris.

As the state district court noted, the SANE report contains no exonerating information. Reid claims the SANE report contradicts Harris's story that she was on her hands and knees for the sexual assault because the nurse found no blunt force trauma to Harris's hands and knees. (ECF No. 32 at 10.) Reid overlooks

[3] Reid raised a claim on direct appeal that his guilty plea was not knowing and voluntary, however, for purposes of his petition, Reid contends that "[b]ecause the state courts did not adjudicate any of Mr. Reid's claims on their merits, § 2254 does not apply at all to Mr. Reid's case." (*See* ECF No. 67 at 2.) *See also, infra*, pp. 22–23.

that sexual assault does not inescapably lead to blunt force trauma. Reid claims that, although nurses found an abrasion on Harris's posterior fourchette, it may have been caused by Harris's admitted fall on her buttocks or her efforts to become pregnant. (ECF No. 32 at 10-11.) Again, Reid overlooks that sexual assault does not necessarily lead to injury. Moreover, the report does not necessarily undermine Harris's credibility as she told the nurse she fell on her buttocks and, other than the sexual assault, her last sexual encounter occurred on January 1, 2013. Trial counsel advised Reid the trial would be focused on Harris's credibility and SANE report does not foreclose the possibility that Reid sexually assaulted and robbed Harris. As the state district court surmised, receipt of the SANE report after Reid pleaded guilty is insufficient to undermine the conclusion that Reid's decision to accept the plea agreement and enter guilty pleas represented a voluntary choice among known alternative courses of action.

Under the totality of the circumstances, Reid fails to demonstrate requisite prejudice to overcome the procedural default of ground 1(a). Accordingly, ground 1(a) is dismissed as procedurally defaulted.

**3. Probationary Sentence**

In ground 1(b), Reid alleges his guilty plea is not knowing and involuntary because he relied upon trial counsel's gross mischaracterization of his chances for a probationary sentence and would have exercised his right to trial had he been provided reasonable advice. (ECF No. 32 at 12-14.)

The state court record belies Reid's assertion that trial counsel assured him a probationary sentence. Reid signed a plea

agreement "freely and voluntarily" in which he confirmed "no one made any promises to induce [him] to enter into the agreement." He confirmed he understood the state district court made the sentencing decision and had sole discretion whether to grant probation or not. Although the plea agreement discloses the offenses for attempted sexual assault and robbery are probation-eligible offenses under certain statutory and other conditions, nothing in the plea agreement guarantees or promises Reid a probationary sentence. Reid confirmed in his plea agreement and at his chance of plea hearing, that he understood the determinations necessary for the court to consider a probationary sentence were wholly dependent upon the discretion of the psychosexual evaluator and the discretion of the sentencing court.

The state court record further establishes Reid knew there was a significant probability he would be sentenced to imprisonment rather than probation. Moments after entering his guilty pleas, Reid asked for a bail reduction so he could "get his family set up" "in the event he does end up spending significant time away." Thus, Reid was not only aware that a probationary sentence was not guaranteed; Reid wished to prepare for that potential outcome. That the odds of obtaining probationary sentence fell short of Reid's hope and desire did not render his guilty pleas not knowing and voluntary given he was on notice probation was not assured. *See Brady*, 397 U.S. at 756-57 ("A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.").

Under the totality of the circumstance set forth in the state court record, Reid falls fails to demonstrate requisite prejudice necessary to overcome the procedural default of ground 1(b). Accordingly, ground 1(b) is dismissed as procedurally defaulted.

**B. Ground 2—Ineffective Assistance of Trial Counsel**

In ground 2, Reid alleges trial counsel was ineffective in violation of the Fifth, Sixth, and Fourteenth Amendments because prior to his entering his guilty pleas, counsel (a) failed to provide him a copy of the SANE report and (b) grossly mischaracterized his chances of a probationary sentence. (ECF No. 32 at 13–14.)

**1. Standards for Evaluating Effective-Assistance-of-Counsel**

For claims of ineffective assistance of counsel, a petitioner must demonstrate (1) counsel's "representation fell below an objective standard of reasonableness[;]" and (2) counsel's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citing *Strickland*, 466 U.S. at 693). "An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." *Strickland*, 466 U.S. at 695.

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 24 (2013). In considering an ineffective assistance of counsel claim, a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. A petitioner making an ineffective assistance claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. It is a petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687.

The constitutional right to effective assistance of counsel in criminal proceedings extends to the plea-bargaining process. *See Hill,* 474 U.S. at 56–58. Where a defendant enters a guilty plea upon counsel's advice, "voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (holding *Strickland* applies to challenges to guilty pleas based on ineffective assistance of counsel). "[S]trict adherence to the *Strickland* standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage" and "habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel." *Premo v. Moore*, 562 U.S. 115, 125 (2011).

**2. SANE Report**

Reid claims there is no strategic reason for trial counsel's failure to provide him a copy of the SANE report prior to the

guilty plea, and but for counsel's failure to do so, Reid would not have pleaded guilty and would have exercised his right to trial. (ECF No. 32 at 14.) The state court record, however, demonstrates that, under the circumstances, trial counsel's failure to provide Reid with a copy of the SANE report prior to the guilty pleas did not fall below an objective standard of reasonableness.

The record shows that prior to entering the guilty pleas, counsel received the SANE report, Reid was aware of the SANE report, counsel discussed with Reid the probable effects of going to trial based on a defense that consisted of attempts to impeach Harris, and counsel advised him it was a difficult defense on which to succeed. Consistent with counsel's advice, the state court record shows Harris's account of the offenses was likely to be supported at trial by evidence that police found the distinctive black and pink firearm in Reid's home, Reid's semen in the bathroom of the vacant house, and a record of Reid's phone calls to Harris.

Reid alleges trial counsel's actions were deficient and prejudicial because he was unaware at the time that he entered his guilty pleas that the SANE report contradicted Harris's story that she was on her hands and knees during the sexual assault because the SANE nurse found no blunt force trauma to Harris's hands and knees. However, an objectively reasonable attorney could anticipate that information would not materially impeach Harris at trial as the State might persuasively contend the sexual assault would not have inescapably led to blunt force trauma to Harris's hands and knees. Reid also alleges he was unaware of Harris admitted her fall on her buttocks, and her sexual activity,

including her efforts to become pregnant, which he claims could explain the abrasion the nurse found on Harris's posterior fourchette. However, an objectively reasonable attorney could anticipate this information was not necessarily impeaching given the State might persuasively contend sexual assault does not necessarily lead to injury. Moreover, the report does not necessarily undermine Harris's credibility as she admitted she fell on her buttocks and, other than the sexual assault, she told the nurse her last sexual encounter occurred on January 1, 2013.

Reid also fails to demonstrate a reasonable probability he would have opted for trial, instead of pleading guilty, had counsel shown him the SANE report before he pleaded guilty. As the state district court noted, the report does not prove Reid did not commit the offenses or contradict the evidence gathered by police, including the presence of Reid's semen in the vacant house. Given trial counsel's advice to Reid about the probable effects of going to trial, failure to provide the SANE report to Reid did not deprive him of information that would have materially changed the calculus whether to exercise his right to trial or accept the plea agreement and fails to show Reid did not exercise a voluntary and intelligent choice among alternative courses of action.

Under the totality of the circumstances in the state court record, Reid fails to establish the requisite actual prejudice required to overcome his procedural default for ground 2(a). Accordingly, ground 2(a) is dismissed as procedurally defaulted.

**3. Probationary Sentence**

In ground 2(b), Reid alleges there can be no strategic reason for trial counsel's "grossly inaccurate prediction that Mr. Reid

would receive probation." (ECF No. 32 at 14.)

When a defendant considers a plea agreement, reasonably competent counsel will attempt to learn all the facts of the case and make an estimate of a likely sentence. *Hill*, 474 U.S. at 56–60 (relying on *McMann v. Richardson,* 397 U.S. 759, 769–71 (1970)). However, "erroneous predictions regarding a sentence are deficient only if they constitute 'gross mischaracterization of the likely outcome' of a plea bargain 'combined with . . . erroneous advice on the probable effects of going to trial.'" *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir.1990) (quoting *Iaea v. Sunn*, 800 F.2d 861, 864–65 (9th Cir. 1986)).

The state court record belies Reid's assertion that trial counsel assured him a probationary sentence. Reid signed a plea agreement "freely and voluntarily" in which he confirmed "no one made any promises to induce [him] to enter into the agreement." He also confirmed he understood the state district court made the sentencing decision and had sole discretion whether to grant probation or not. The plea agreement includes provisions stating the offenses for attempted sexual assault and robbery are probation-eligible offenses under certain statutory and other conditions but does not guarantee or promise Reid a probationary sentence. Reid also confirmed in his plea agreement and at his chance of plea hearing, that he understood the determinations necessary for the court to consider a probationary sentence were wholly dependent upon the discretion of the psychosexual evaluator and the discretion of the sentencing court.

The state court record further establishes Reid knew there was a significant probability he would be sentenced to imprisonment

rather than probation as, shortly after Reid entered his guilty pleas, trial counsel explained to the state district court that Reid desired a bail reduction so he could "get his family set up" "in the event he does end up spending significant time away."

Even assuming trial counsel grossly mischaracterized Reid's chances for probation, counsel's accurate advice about the probable effects of going to trial demonstrates counsel performed reasonably under the totality of the circumstances. As discussed, the state court record reveals, strong evidence supported Harris's account of the offenses, making it reasonable for trial counsel and Reid to predict that trial could result in convictions for the charges in the information for which probation was not a possibility, and if so, Reid could be sentenced to a longer term of imprisonment than for the offenses to which he pleaded guilty.[4] That Reid's chances, and attempt to, procure a probationary sentence ultimately fell short of his desires does not render involuntary Reid's choice among the alternative courses of action presented to him.

Even assuming Reid was not accurately informed about his chances for probation, he fails to show a reasonable probability the result of the proceedings would have been different had trial counsel informed him that his chances for a probationary sentence were low. The plea agreement and the state district court's plea

[4] Reid acknowledged in his motion to withdraw his guilty plea that he "is well aware that the pleas he has entered in this case carry a significantly lower maximum sentence than the charges with which he originally faced." (ECF No. 38-2 at 6.) This is supported by the information, which charged, *inter alia*, sexual abuse with a deadly weapon, not causing substantial bodily harm, which was punishable for 10 years to life plus an equal and consecutive term of imprisonment for 1 to 20 years. (ECF No. 37-11.) *See* NRS §§ 193.165; 200.364; 200.366(2)(b), *as amended by* Laws 2007, c. 528, §7.

canvass alerted Reid that a probationary sentence was not guaranteed, the State represented that it would seek a lengthy prison sentence, and Reid confirmed he understood that prior to entering into the plea agreement, he was not guaranteed a particular sentence. *See Doganiere v. United States*, 914 F.2d 165, 168 (9th Cir. 1990)(holding that the petitioner "suffered no prejudiced from his attorneys' prediction because, prior to accepting his guilty plea, the court explained that the discretion as to what the sentence would be remained entirely with the court."); *see also Womack v. Del Papa*, 497 F.3d 998, 1003–04 (9th Cir. 2007) (holding petitioner was not prejudiced even if counsel failed to inform him about the unavailability of parole, because the written plea agreement and state court judge informed petitioner the state retained the right to argue for a sentence without parole.) Given Reid's expectations when he accepted the plea offer, his after-the-fact assertion that he would not have accepted it but for his counsel's deficient advice about the odds of successfully obtaining probation, is implausible. *See, e.g.*, *Jones v. Wood*, 114 F.3d 1002, 1012 (9th Cir. 1997) ("Jones's contention that he would have 'cut his losses' and accepted the plea offer if he believed it was open to him, is implausible in light of what Jones knew at the time the offer was made.").

For these reasons, Reid fails to establish the requisite actual prejudice to overcome his procedural default of ground 2(b). Accordingly, ground 2(b) is dismissed as procedurally defaulted.

**C. Ground 3—Ineffective Assistance of Appellate Counsel**

In ground 3, Reid alleges appellate counsel was ineffective in violation of the Fifth, Sixth, and Fourteenth Amendments by

failing to "litigate the precise claims raised" in ground 1. (ECF No. 32 at 14–15.)

To prevail on an ineffective assistance of appellate counsel claim, a petitioner must show (1) appellate counsel "unreasonable failed to discover nonfrivolous issues and to file a merits brief raising them" and (2) "a reasonable probability that, but for his counsel's [unreasonable performance], he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). The Ninth Circuit has explained that the *Strickland* prongs "partially overlap" when applying *Strickland* to a claim of ineffective assistance of appellate counsel:

> In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy . . . Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason—because she declined to raise a weak issue.

*Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (citations and footnotes omitted).

Reid's appellate counsel filed a state court direct appeal alleging Reid's guilty plea was not voluntary and knowing because he did not know "what may have been exculpatory evidence" contained in the SANE report. (ECF No. 40-2 at 6-7.) The State filed an opposition arguing the state district court did not abuse its discretion in denying the motion to withdraw the guilty plea

because Reid failed to demonstrate there were exonerating facts in the SANE report. (ECF No. 38-20 at 5–11.) The state appellate court rejected the claim:

> Appellant Rafael Reid claims the district court abused its discretion by denying his presentence motion to withdraw guilty plea. A defendant may move to withdraw a guilty plea before sentencing, NRS 176.165, and "a district court may grant a defendant's motion to withdraw his guilty plea before sentencing for any reason where permitting withdrawal would be fair and just," *Stevenson v. State*, 131 Nev. ___, ___, 354 P. 3d 1277, 1281 (2015). To this end, the Nevada Supreme Court recently disavowed the standard previously announced in *Crawford v. State*, 117 Nev. 718, 30 P.34 1123 (2001), which focused exclusively on whether the plea was knowing, voluntarily, and intelligently made, and affirmed that "the district court must consider the totality of the circumstances to determine whether permitting withdrawal of a guilty plea before sentencing would be fair and just." *Stevenson*, 131 Nev. at ___, 354 P.3d at 1281.
>
> Reid claims he should have been able to withdraw his guilty plea because counsel failed to provide him with a copy of the SANE exam report prior to him pleading guilty. He claims this report contained potentially exculpatory evidence and he would not have pleaded guilty had he read the report. Reid fails to allege what this potentially exculpatory evidence was, provide this court with a copy of the SANE exam report, or provide this court with a transcript from the hearing on the motion to withdraw his guilty plea. As the appellant, it is Reid's burden to provide this court with an adequate record for review. *See McConnell v. State*, 125 Nev. 243, 256 n.13, 212 P.3d 307, 319 n.13 (2009). We conclude Reid fails to demonstrate the district court abused its discretion in denying the presentence motion to withdraw the guilty plea . . . .

(ECF No. 38-23 at 1-2.)

Appellate counsel was confined to the state court record, so failure to include the SANE report in the record on appeal was not deficient performance under *Strickland*. For the reasons discussed in ground 1, given the state court record, appellate counsel could reasonably determine the precise allegations contained in ground 1 lacked substantive merit and would not have succeeded on appeal.

Appellate counsel could additionally and reasonably conclude the state district court's statements about its consideration of Reid's allegations about the SANE report and a probationary sentence in rejecting his request to withdraw the guilty plea, did not exhibit the arbitrariness necessary to overcome the abuse of discretion standard applicable to appeals from Nevada state district court determinations whether it was fair and just to permit withdrawal of a guilty plea. *See State v. Smith*, 131 Nev. 628, 630, 356 P.3d 1092, 1094 (2015) ("An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason.") (citing *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001)).

Under the totality of the circumstances in the state district court record at the time Reid's appeal, Reid fails to establish the requisite actual prejudice to overcome his procedural default for ground 3. Accordingly, ground 3 is dismissed as procedurally defaulted.

***Consideration of Possible Issuance of a Certificate of Appealability***

Under Rule 11 of the Rules Governing Section 2254 Cases, the Court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to petitioner.

As to the claims rejected on procedural grounds, the petitioner must show: (1) that jurists of reason would find it debatable whether the petition stated a valid claim of a denial of a constitutional right; and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

While both showings must be made to obtain a COA, "a court may find that it can dispose of the application in a fair and prompt manner if it proceeds first to resolve the issue whose answer is more apparent from the record and arguments." *Id.* at 484. Where a plain procedural bar is properly invoked, an appeal is not warranted. *Id.*

The Court will deny a COA as to all claims. Jurists of reason would not find debatable or wrong the denial of grounds 1, 2 and 3 as procedurally defaulted.

***Conclusion***

IT THEREFORE IS ORDERED that all claims in the operative second amended petition (ECF No. 32) are DENIED as procedurally defaulted and this action is DISMISSED with prejudice.

IT FURTHER IS ORDERED that Reid's motion for an evidentiary hearing (ECF No. 65) is DENIED.[5]

IT FURTHER IS ORDERED that a certificate of appealability is DENIED as to all grounds.

The Clerk of the Court shall enter final judgment accordingly in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED: this 3rd day of June, 2022.

HOWARD D. MCKIBBEN
UNITED STATES DISTRICT JUDGE

---

[5] Reid's motion for an evidentiary hearing is denied. *See Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998) ("It is axiomatic that when issues can be resolved with reference to the state court record, an evidentiary hearing becomes nothing more than a futile exercise."); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.")